FREIBERG v BOARD OF EDUCATION OF BIG BAY DE NOC
SCHOOL DISTRICT

1. Schools and School Districts—Statutes—Teachers' Tenure
Act—Purpose of Act—Protecting Teachers' Rights.

The teachers' tenure act promotes good order and the welfare of
the state and the school system by preventing removal of
capable and experienced teachers at the personal whim of
changing office holders; its purpose is to maintain an adequate
and competent teaching staff, free from arbitrary political and
personal interference (MCLA 38.71 *et. seq.).*

2. Schools and School Districts—Statutes—Teachers' Tenure
Act—State Tenure Commission—Powers of Commission.

The State Tenure Commission is vested with such powers as are
necessary to carry out and enforce the provisions of the teach-
ers' tenure act (MCLA 38.137).

3. Schools and School Districts—Statutes—Interpretation of
Statutes—Teachers' Tenure Act—Protecting Teachers'
Rights.

Statutes which authorize local school districts to contract with
and hire teachers and which state that a tenure teacher who
has been laid off for economic reasons shall be appointed to the
first vacancy in the school district for which certified and
qualified require an interpretation which is consistent with the
purpose of the teachers' tenure act of protecting teachers'
rights (MCLA 340.583, 340.578, 340.569, 38.105).

4. Schools and School Districts—Teachers' Tenure Act—Tenure
—Teacher—Right of Appeal.

A teacher who has achieved tenure status may, under the teach-
ers' tenure act, appeal to the State Tenure Commission any
decision of a controlling school board (MCLA 38.121).

References for Points in Headnotes

[1–6] 68 Am Jur 2d, Schools § 149 *et seq.*

Teachers' tenure statutes, 110 ALR 791.

Constitutionality and construction of repeal or modification by
legislative action of teachers' tenure statute, as regards retrospec-
tive operation. 147 ALR 293.

5. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS' TENURE ACT—TEACH-
ERS' EMPLOYMENT—NECESSARY REDUCTION IN PERSONNEL—
GOOD FAITH—SUBTERFUGE—STATE TENURE COMMISSION—JURIS-
DICTION—FACTUAL DETERMINATION.

The State Tenure Commission has jurisdiction to make a factual
determination as to whether a local school board's action in
terminating a teacher's employment was part of a necessary
reduction in personnel due to a bona fide economic necessity
where the teacher alleges that the termination was not made
in good faith and that the stated justification was a subterfuge;
otherwise a local school board would be free to evade the
limitations on its authority imposed by the teachers' tenure act.

6. APPEAL AND ERROR—TEACHER TENURE CASES—DE NOVO HEARINGS
—QUESTION OF FACT—STATE TENURE COMMISSION.

An appellate court may not consider a teacher tenure case *de
novo;* it cannot decide questions of fact which were before the
State Tenure Commission.

Appeal from Ingham, James T. Kallman, J.
Submitted Division 2 April 9, 1975, at Lansing.
(Docket No. 20304.) Decided May 29, 1975. Leave
to appeal applied for.

Petition by Carl Freiberg requesting reversal of
a decision of the State Tenure Commission and to
compel the tenure commission to resolve the mer-
its of a dispute between the plaintiff and the Board
of Education of Big Bay De Noc School District.
Petition granted. The board of education appeals
by leave granted. Plaintiff cross appeals for an
independent review of the record by the Court of
Appeals and an order of immediate reinstatement
with back pay. Circuit court affirmed and case
remanded to the tenure commission.

*Foster, Lindemer, Swift & Collins, P. C.* (by *Lyn-
wood E. Beekman),* for plaintiff.

*Keller, Thoma, McManus, Toppin & Schwarze,
P. C.* (by *Thomas H. Schwarze),* for defendant

Board of Education of Big Bay De Noc School District.

Before: V. J. Brennan, P. J., and D. E. Holbrook and M. F. Cavanagh, JJ.

M. F. Cavanagh, J. The defendant, Board of Education of Big Bay De Noc School District, appeals by leave granted from an Ingham County Circuit Court judgment reversing the decision of the teacher tenure commission and directing that commission to resolve the merits of the dispute between the plaintiff Carl Freiberg and the defendant.

The plaintiff is a tenure teacher who was employed continuously at the defendant school district from the beginning of the 1967–68 school year until his termination in late August of 1971. On the morning of the first day of the 1971–72 school year, August 30, 1971, the superintendent of the district, Frank Stupak, called plaintiff into his office to inform him that his services were no longer required and that he had been "laid off". The next day plaintiff received a letter dated August 27, 1971, from the secretary of the defendant board of education advising him that, because of legal and financial conditions beyond the board's control, he would not be reemployed for the 1971–72 school year.

Mr. Freiberg, by a letter dated August 31, 1971, requested a hearing pursuant to Article IV of the teachers' tenure act. MCLA 38.101 *et seq.;* MSA 15.2001 *et seq.* On September 27, 1971, Freiberg and another teacher, who was "laid off" at the same time, filed petitions with the teacher tenure commission. The latter teacher, prior to the time the commission held a hearing, withdrew his petition and requested that the matter concerning

his termination be closed. In his petition plaintiff alleged that the actual reasons underlying the board of education's decision not to reemploy him were not based upon financial conditions, but rather were because of his performance as a teacher and his other related activities. He further alleged that "by the retention of new personnel and a careful revision of class schedules", the Board had violated his rights under the teachers' tenure act.

On October 11 and 12, 1971, the board of education held a joint hearing on plaintiff's and the other teacher's appeal. By a letter dated November 8, 1971, plaintiff was advised that the board had decided to uphold its prior decision to terminate his employment.

Almost a year later, on September 29, 1972, the teacher tenure commission held a hearing on plaintiff's petition. The commission received testimony from the school superintendent, State Representative Charles Varnum, and a representative of the intermediate district concerning the amount of money in the school operating budget and the amount available in state financial aid. The position of the defendant was that declining class enrollment and consequentially declining state funds required it to make a necessary reduction in its teaching staff. The board alleged that the plaintiff had less seniority than any employee scheduled to teach the three classes in which the plaintiff was certified.

The plaintiff countered that class schedules were "juggled" to eliminate him and that there were no financial exigencies which required the termination of his employment. Plaintiff presented considerable testimony concerning the animosity felt by Superintendent Stupak and members of the board

toward him as a result of his leadership in the local bargaining unit of the teachers' association in the school district. The 500-page transcript of the commission hearing contains myriad instances, both major and minor, of factual contrariety.

By an opinion dated January 30, 1973, the teacher tenure commission held that it lacked jurisdiction to review the plaintiff's dismissal because, under provisions of the tenure act, the board of education had the sole prerogative to decide budgetary matters:

"An investigation by this commission into the necessity or reasons for layoffs would soon abrogate the rights of the school board and nullify the purpose of [MCLA 38.105; MSA 15.2005] * * * . Boards of any school district are within their rights to determine the number of professional staff to be hired in any given contractual year, and to adopt a budget whereby the income will balance expenditures."

Commission member Donald A. Schoenrath issued a strong dissent from the commission opinion. His dissenting opinion concluded not only that the commission had jurisdiction to decide the dispute, but also that the record "clearly shows the appellee board and its agents deliberately and blatantly schemed to arbitrarily and capriciously rid themselves of a qualified and capable teacher". Contrary to the defendant's assertions on appeal, it is clear from the majority opinion that it did not reach the factual question of whether the board used the subterfuge of "necessary reduction in personnel" to rid themselves of the plaintiff.

On February 22, 1973, the plaintiff petitioned the Ingham County Circuit Court to reverse the decision of the commission and to remand the case

for a determination on the merits of whether his dismissal was for legitimate financial reasons or was a bad faith attempt to circumvent the protection of the teachers' tenure act.

The circuit court, after requesting briefs and hearing oral argument, issued an order remanding the case for a hearing on the merits before the commission. From this order, the defendant board of education appeals, arguing that the commission lacks jurisdiction. The plaintiff has filed a cross-appeal arguing that this Court should make an independent review of the record and order the board to immediately reinstate him with such back pay as he may be due. This Court granted the application for leave to appeal on November 21, 1974.

Although the parties have submitted multiple issues for review, the substance of the question to be decided by this Court can be compressed into one issue: does the teacher tenure commission have jurisdiction to review the action of a school board which has terminated a tenured teacher's employment on the grounds of "necessary reduction in personnel", in order to determine whether, as a factual matter, the reduction in personnel was made in good faith or as a subterfuge to deprive a teacher of his or her rights under the tenure act?

The defendant cites the recent decision of *Steeby v Highland Park School District,* 56 Mich App 395; 224 NW2d 97 (1974), as disposing of this issue in its favor. In that case, tenure teachers were advised that their contracts would not be renewed because of the necessity to eliminate certain positions for financial reasons. This opinion, authored by Judge Van Valkenburg, phrased the issue as follows:

"Must tenure teachers be given a written 60-day notice and a hearing before the board of education, when, for economic reasons, their contracts are not renewed for the coming school year?" (Emphasis deleted.) 56 Mich App 395, 397.

Deciding the question in the negative, *Steeby* found implicit in the tenure act the conclusion that school districts are excused from offering a tenure teacher an employment contract when it is necessary to reduce personnel. The Court could find no statute explicitly granting such teachers the right to timely notice. Further, *Steeby* concluded that the statutory right to a hearing before the local board of education was invoked only by bringing "charges" under MCLA 38.101, 38.102; MSA 15.2001, 15.2002. Judge VAN VALKENBURG continued:

"Indeed, there would appear to be no real reason for a hearing where the reason for termination is a reduction in personnel rather than personal charges against a teacher, since the purpose of the hearing is to provide the opportunity for the teacher to answer the charges being brought against him. The protection which the act provides where the termination is the result of a reduction of personnel is not that of a pointless hearing but is rather that found in MCLA 38.105, *supra,* which provides that those tenure teachers thereby terminated shall be appointed to the next vacancy." *Id.* at 399.

The issue before the Court in *Steeby* was entirely different than that which confronts this Court. In the present case, the plaintiff raises no complaint as to notice and hearing. Indeed, he received a full hearing before the defendant board. The teacher tenure commission has correctly concluded that a hearing before the local board of education is not a prerequisite to the commission's

assertion of jurisdiction. *Walters v Garden City Board of Education* (State Tenure Commission, Docket No. 69-2).

The purpose of the teachers' tenure act, MCLA 38.71 *et seq.;* MSA 15.1971 *et seq.,* is to promote,

"good order and the welfare of the State and of the school system by preventing removal of capable and experienced teachers at the personal whims of changing office holders." *Rehberg v Board of Education of Melvindale,* 330 Mich 541, 545; 48 NW2d 142 (1951).

And in Justice (now Chief Justice) T. G. KAVANAGH's dissenting opinion in *Munro v Elk Rapids Schools,* 383 Mich 661, 689; 178 NW2d 450 (1970), *rev'd on rehearing* 385 Mich 618; 189 NW2d 224 (1971), the purpose of the act was further illuminated:

"The whole thrust of the act is to *limit* the local boards' power in its employment of teachers. 'Its purpose is to maintain an adequate and competent teaching staff, free from political and personal arbitrary interference.' "

The teacher tenure commission, under MCLA 38.137; MSA 15.2037, is vested with such powers as are necessary to carry out and enforce the provisions of the act. *Henderson v Memphis Community School District,* 57 Mich App 770; 226 NW2d 725 (1975). *lv den,* 394 Mich 763 (1975).

MCLA 38.105; MSA 15.2005 states:

"Any teacher on permanent tenure whose services are terminated because of a necessary reduction in personnel shall be appointed to the first vacancy in the school district for which he is certified and qualified."

The defendant contends that this provision, and

statutes, such as MCLA 340.569, 340.578, 340.583; MSA 15.3569, 15.3578, 15.3583, which generally authorize local school districts to contract with and hire teachers, require the interpretation that local school boards have unreviewable discretion in laying off teachers because of budgetary conditions. The defendant argues further that MCLA 38.105; MSA 15.2005 provides a tenure teacher who has been laid off for economic reasons with only one remedy—to be appointed to the first vacancy for which he or she is qualified. We can see nothing in these statutes which requires an interpretation which is contrary to the purpose of the act as stated in *Rehberg v Board of Education of Melvindale, supra.*

MCLA 38.121; MSA 15.2021 provides that a tenure teacher "may appeal any decision of a controlling board under this act" to the teacher tenure commission. The construction that any decision of a school board is appealable is consistent with the Michigan Supreme Court's avowed intention to construe the tenure act to favor the legislative purpose of protecting teachers' rights. See *Weckerly v Mona Shores Board of Education,* 388 Mich 731, 734; 202 NW2d 777 (1972).

Although no appellate court in this state has expressly considered the reviewability of a "necessary reduction in personnel" termination which is alleged to be a subterfuge, the Michigan Supreme Court on several occasions has made relevant considerations in areas analogous to tenure teacher concerns. In *Swantush v Detroit,* 257 Mich 389, 396–397; 241 NW 265 (1932), the Court quoted with approval the following statement from *State ex rel Boyd v Matson,* 155 Minn 137; 193 NW 30 (1923):

" 'But it is well settled that statutes forbidding mu-

nicipal officials from removing appointees except for cause are not intended to take away the power given such officials over the administrative and business affairs of the municipality, and do not prevent them from terminating the employment of an appointee by abolishing the office or position which he held, *if the action abolishing it be taken in good faith for some legitimate purpose, and is not a mere subterfuge to oust him from his position.'* "(Emphasis added.)

See also *Slavin v Detroit,* 262 Mich 173, 175, 177; 247 NW 145 (1933), and *Fricke v Grand Rapids,* 278 Mich 323; 270 NW 697 (1936). Although none of these three cases involve tenure teachers, they do express a willingness to look behind an employer's statement of economic need to be sure that the layoff was not a subterfuge. It is also interesting to note that in *Wilson v Flint Board of Education,* 361 Mich 691, 693; 106 NW2d 136 (1960), the Court endorsed a study published in 37 Mich L Rev 430, 431 (1939), which concluded that one of the deleterious practices which existed prior to the tenure act was the discharge of teachers,

" 'in order to effect economies either by diminishing the number of teachers and increasing the amount of work assigned to those retained, or by creating vacancies to be filled by lower salaried, inexperienced employees.' "

We conclude that because of the general purpose of the tenure act, the statutory provision giving teachers the right to appeal any adverse decision by the local board of education, and the above-stated cases in analogous situations, the circuit court properly remanded the case for consideration

by the teacher tenure commission.[1] Where a teacher alleges that the termination of his or her employment was not done in good faith as a "necessary reduction in personnel" and that the stated justification was actually a subterfuge, the tenure commission has jurisdiction to determine, as a factual matter, whether the local school board took the action because of bona fide economic necessity.

If the school board's declaration that a reduction in personnel is necessary is unreviewable, then the board is free to evade the limitations on its authority imposed by the teachers' tenure act.

This conclusion is supported by authority in other jurisdictions. In *Fitzgerald v Hampton,* 152 US App DC 1; 467 F2d 755 (1972), the District of Columbia Circuit held that the Federal Civil Service Commission should grant a hearing to nonfrivolous allegations of an illegal discharge even though the employing Federal agency had stated that the termination was due to a "reduction-in-force".

Many state court decisions have reached similar results. In *Ehret v School District of Borough of*

---

[1] Two recent decisions in this Court lend further support to this conclusion. In *East Detroit Federation of Teachers, AFT Local 698 v East Detroit Board of Education,* 55 Mich App 451; 223 NW2d 9 (1974), the Court held that the board of education, after giving probationary teachers timely notice and a hearing, had not acted arbitrarily and capriciously in terminating their employment since an examination of the school board's reasons demonstrated that the action was taken because of a projected decline in student enrollment. Subsequently, it was stated in *Shippey v Madison District Public Schools,* 55 Mich App 663; 223 NW2d 116 (1974), that the tenure act must be construed to provide permanent tenure teachers with contractual safeguards on a par with probationary teachers. *See also Bruinsma v Wyoming Public Schools,* 38 Mich App 745; 197 NW2d 95 (1972). Though the logic is perhaps not inescapable from these cases that economic terminations are reviewable, it would be anomalous to provide probationary teachers in this situation with more rights than tenure teachers.

*Kulpmount,* 333 Pa 518, 528; 5 A2d 188, 193 (1939), the Pennsylvania Supreme Court stated:

"Of course, a department may not be abolished merely to circumvent the provisions of the Act and to accomplish the dismissal of a teacher for political or arbitrary reasons by unlawful subterfuge."

It is interesting to note that two Michigan Supreme Court decisions concerning teacher tenure have relied upon and cited *Ehret* with approval. See *Rehberg v Board of Education of Melvindale, supra,* 330 Mich 541, 545, and *Munro v Elk Rapids Schools, supra,* 383 Mich 661, 689. See also *Alberts v Garofalo,* 393 Pa 212; 142 A2d 280 (1958).

Of course the states have utilized considerably different statutory schemes for the protection of tenure teachers. But a review of the cases demonstrates that courts in many states have not hesitated to review the good faith of a dismissal of teachers for the stated reason of economic exigencies. See *Fuller v Berkeley School District,* 2 Cal 2d 152; 40 P2d 831 (1934), *Gassen v St Charles Parish School Board,* 199 La 954; 7 So 2d 217 (1942), *State ex rel Ging v Board of Education of City of Duluth,* 213 Minn 550; 7 NW2d 544 (1942), *Downs v Board of Education of Hoboken Dist,* 12 NJ Misc 345; 171 A 528 (1934), *Swisher v Darden,* 59 NM 511; 287 P2d 73 (1955), *Bates v Board of Education of Mineral County,* 133 W Va 225; 55 SE2d 777 (1949), *State ex rel Karnes v Board of Regents of Normal Schools,* 222 Wis 542; 269 NW 284 (1936).

The parties to this appeal disagree extensively over the facts surrounding the school board's termination of plaintiff's employment. We have reviewed the record and have determined that the commission received considerable evidence sup-

porting Commissioner Schoenrath's factual finding of bad faith. However, the remaining members of the commission did not pass on this factual question and although both parties have urged us to conclude factually in their favor, we cannot do so. An appellate court cannot consider the record in a teacher tenure case *de novo;* it cannot decide questions of fact which were before the commission. *Long v School Board,* 350 Mich 324, 326; 86 NW2d 275 (1957). *Rehberg v Bd of Education of Melvindale,* 345 Mich 731, 740; 77 NW2d 131 (1956). The relief granted by the trial court was correct: the case must be remanded to the commission to determine whether the defendant board of education, under the guise of a "necessary reduction in personnel", used circuitous methods in removing the plaintiff from its school system without the protections afforded by the teachers' tenure act.

Affirmed. No costs.