CHESTER v HARPER WOODS SCHOOL DISTRICT

Docket No. 77-2499. Submitted June 6, 1978, at Detroit.—Decided November 27, 1978. Leave to appeal applied for.

Plaintiffs Joseph Chester, Thomas Stevens and Eugene Rieckhoff are tenured teachers in the employ of defendant Harper Woods School District who were laid off in 1972 as a result of a necessary reduction in personnel. Mr. Chester had taught elementary physical education for 21 years and was, in addition, certified to teach all 7th and 8th grade subjects as well as history, English, French and biology in grades 9 through 12. Another elementary phys-ed teacher, Mr. Goodwin, was affected by the 1972 layoff in that he was transferred to an elementary classroom. When an opening arose in elementary physical education, Mr. Goodwin, pursuant to the collective bargaining agreement, was reassigned to fill the vacancy. When two openings occurred in English, Mr. Chester was considered but not approved because one involved a developmental language lab and the other a course in drama and it was felt that Mr. Chester's 21-year absence from English made him unqualified to handle either program. Mr. Stevens, in 14 years with defendant school district, had taught general science in grades 8 through 12, 9th grade civics, 11th grade world history, 8th grade home mechanics (shop) and 9th grade auto shop, and coached varsity swimming and football. He was also certified to teach all 7th and 8th grade subjects, science and history for grades 9 through 12 and physical education for all grades. Two positions opened up, one teaching 7th and 8th grade science and 11th and 12th grade chemistry and the other teaching 7th grade math and general science, but Mr. Stevens was rejected as unqualified for either math or chemistry. Mr. Rieckhoff, before coming to defendant school district, was, for 13 years, in charge of the junior high instrumental music program in

REFERENCES FOR POINTS IN HEADNOTES
[1] 68 Am Jur 2d, Schools §§ 129, 132.
[2] 68 Am Jur 2d, Schools §§ 149-160, 202-214.
[3] 68 Am Jur 2d, Schools §§ 138-143.
[4] 68 Am Jur 2d, Schools §§ 50-55, 138-143.
[5-9] 68 Am Jur 2d, Schools §§ 50-55, 138-143, 149-160.

another school district. In defendant school district he taught elementary, junior and senior high band, junior high music appreciation and girls' vocal music, which was discontinued for lack of interest. He was also certified to teach all 7th and 8th grade subjects, music in all grades and social studies in grades 9 through 12. When an elementary vocal music opening appeared Mr. Rieckhoff was rejected because his vocal music teaching certification was not in his file and because of his failure in teaching the course before.

These teachers appealed the school board's decisions to fill the vacancies with new teachers to the tenure commission alleging that they were certified and qualified for the vacancies and entitled to them or that the school board deliberately reshuffled class assignments to create vacancies for which they were not qualified. The tenure commission found that all three were denied the first vacancies for which they were certified and qualified and that the school board did attempt to block the reemployment of Mr. Chester and Mr. Stevens by manipulating class schedules. The Wayne Circuit Court, Roland L. Ozark, J., affirmed. Defendant appeals. *Held:*

1. The word "qualified", in the statute requiring that a tenured teacher laid off as a result of a necessary reduction in personnel be appointed to the first vacancy for which he is certified and qualified, contemplates some level of competency above and beyond mere certification; the local school board is the proper body to establish the criteria for that level of competency which is binding on review by the tenure commission, absent a showing that the criteria was arbitrary, unreasonable or promulgated in bad faith.

2. The tenure commission must determine whether the school board's criteria for qualification are arbitrary, unreasonable or promulgated in bad faith, if not, whether, applying the school board's standards, the complaining teachers are qualified for any of the present vacancies, and, if not, whether they would have been qualified for vacancies which would have occurred had there been no rescheduling before any finding of manipulation in rescheduling can be made.

Reversed and remanded to the tenure commission with instructions.

BRONSON, J., concurred in part and dissented in part. He agreed that the tenure commission may not substitute its own judgment as to a teacher's qualifications for that of a school board in the absence of a determination that the board's decision was arbitrary, capricious or done in bad faith as a subterfuge in order to circumvent the protections of the teacher

tenure act. But he would hold that the finding of manipulation of class schedules amounted to a finding by the tenure commission of bad faith on the part of the school board so as to deprive two of the teachers of vacancies for which the board had previously determined they were qualified and the finding is supported by competent, material and substantial evidence on the whole record. He would hold that a collective bargaining agreement cannot waive rights conferred teachers under the tenure act, would affirm the finding of manipulation by the board with regard to Chester and Stevens and would remand to the commission for a determination of whether the board acted arbitrarily or in bad faith in determining that Rieckhoff was not qualified for the open position.

## OPINION OF THE COURT

1. SCHOOLS AND SCHOOL DISTRICTS—STATUTES—TENURED TEACHERS—
   STATUTORY CONSTRUCTION—CERTIFIED TEACHER—QUALIFIED
   TEACHER.
   The term "qualified" contemplates some level of competence above and beyond mere certification in a statute governing the filling of vacancies by a tenured teacher and the local school board is the proper body to establish the criteria for that level of competence (MCL 38.105; MSA 15.2005).

2. SCHOOLS AND SCHOOL BOARDS—STATUTES—TENURED TEACHERS—
   RIGHT OF REAPPOINTMENT—REVIEWABILITY—SCOPE OF REVIEW.
   A claim by a tenured teacher who had been laid off due to a necessary reduction in personnel that he had been denied his right of first recall as provided by statute and that a school board decision to fill available vacancies with probationary teachers violated the statute is reviewable by the tenure commission; while the review is *de novo,* the tenure commission is free only to reexamine the facts as found by the school board (MCL 38.105, 38.121; MSA 15.2005, 2021).

3. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS—VACANCIES IN SCHOOL
   —SCHOOL BOARDS—LEGISLATIVE FUNCTION.
   The establishment of parameters of qualification to fill vacancies in a school is a legislative rather than quasi-judicial function and is the proper function of the local school board.

4. SCHOOLS AND SCHOOL DISTRICTS—DUTIES OF SCHOOL BOARDS—STAT-
   UTES—CRITERIA OF QUALIFICATION OF TEACHERS.
   The local school board, not the tenure commission, is charged by statute with the duty of hiring duly qualified teachers; there-

fore, it is for the school board to determine the criteria of
teacher qualification (MCL 380.1231; MSA 15.41231).

5. SCHOOLS AND SCHOOL DISTRICTS—TENURE COMMISSION—DECISIONS
   OF SCHOOL BOARDS—QUALIFICATION OF TENURED TEACHER—
   SCOPE OF REVIEW.

   The tenure commission, in reviewing a determination of a school
   board that a tenured teacher is not qualified for an available
   position, is constrained to apply the criteria for qualification set
   out by the school board unless that criteria is either arbitrary,
   unreasonable or promulgated in bad faith; a determination by a
   school board which is not arbitrary, unreasonable or promul-
   gated in bad faith is binding upon the tenure commission.

6. SCHOOLS AND SCHOOL DISTRICTS—SCHOOL BOARDS—TENURED TEACH-
   ERS—DUE PROCESS—QUALIFICATION OF TEACHERS.

   Due process is not offended by a school board's examination of
   "demonstrated competency" as a basis for qualification for
   filling vacancies without providing a prior hearing for tenured
   teachers where the status of complaining teachers is unaffected
   and prompt, adequate administrative review is provided.

   CONCURRENCE IN PART, DISSENT IN PART BY BRONSON, J.

7. SCHOOLS AND SCHOOL DISTRICTS—SCHOOL BOARDS—TENURE COMMIS-
   SION—SCOPE OF REVIEW.

   *A school board may not arbitrarily or in bad faith manipulate a
   schedule so as to close positions for which laid off, tenured
   teachers are qualified; the determination of whether the board
   acted in bad faith or as a subterfuge is a question for the
   tenure commission.*

8. SCHOOLS AND SCHOOL DISTRICTS—TENURE COMMISSION—FINDINGS
   OF FACT—REVIEW—SCOPE OF REVIEW.

   *The Court of Appeals, in reviewing the factual findings of the
   tenure commission, may not make an independent determina-
   tion of the facts but must see that the commission's conclusions
   are supported by competent, material and substantial evidence
   on the whole record.*

9. SCHOOLS AND SCHOOL DISTRICTS—STATUTES—CONTRACTS—TEACHER'S
   CONFLICTING RIGHTS.

   *Rights under a collective bargaining agreement which would
   operate to deprive a teacher of his rights under the teacher
   tenure act must yield to the provisions of the act (MCL 38.172;
   MSA 15.2054).*

*Fieger, Golden & Cousens,* for plaintiffs.

*LaBarge, Zatkoff & Dinning, P.C.,* for defendant.

Before: BASHARA, P.J., and BRONSON and C. W. SIMON,* JJ.

C. W. SIMON, J. Plaintiffs are three schoolteachers with tenure in the employ of defendant school district. In 1972 they were among those laid off when a drop in district revenue caused by an adverse property tax ruling and a millage defeat precipitated a necessary reduction in personnel. When financial conditions improved, however, new positions were created, but the school board appointed new, probationary teachers to fill the vacancies.

Mr. Chester had taught elementary physical education in the Harper Woods School District for 21 years. He was certified to teach all subjects at the seventh and eighth grade levels, and history, English, French and biology for grades 9 through 12. While he and another elementary physical education teacher, Mr. Goodwin, were both affected by the layoff, the latter being assigned to an elementary classroom, Mr. Goodwin, because of a request made pursuant to a collective bargaining agreement between the school district and the teachers association, was reassigned to fill the only vacancy which later arose in elementary physical education. When two openings occurred in English, Mr. Chester was considered for both but not approved because one involved a developmental language lab and the other a course in drama. It was felt by the school board that his 21-year absence from teaching English at the secondary

* Circuit judge, sitting on the Court of Appeals by assignment.

level rendered him unqualified to handle either of these programs which were to be implemented.

Mr. Stevens had been associated with the Harper Woods School District for 14 years, variously teaching general science for grades 8 through 12, 9th grade civics, 11th grade world history, 8th grade home mechanics and 9th grade auto shop, and coaching varsity swimming and football. He was certified to teach all subjects at the 7th and 8th grade levels, science and history for grades 9 through 12 and physical education for grades kindergarten through 12. When two positions opened, one teaching 7th and 8th grade science and 11th and 12th grade chemistry and the other teaching 7th grade mathematics and general science, he was considered for both but rejected as unqualified in both chemistry and mathematics. Mr. Stevens' endorsement was restricted to general science and he had had no undergraduate mathematics preparation.

Mr. Rieckhoff, before coming to Harper Woods, had been in charge of the junior high instrumental music program in Benton Harbor for 13 years. While employed by the Harper Woods School District he taught elementary as well as junior and senior high band, junior high music appreciation and one semester of girls' vocal music. The vocal music program was scheduled for another semester but discontinued because of student disinterest in the instructor's program. He was certified to teach all subjects in grades 7 and 8, music and social studies in grades 9 through 12 and music in kindergarten through 6th grade. When a vacancy teaching vocal music at the elementary level arose, he was considered but determined unqualified. Apparently, Mr. Rieckhoff's certification to teach vocal music was not within his file at the

time of the board's decision and the nonsuccess of his prior attempt at teaching the course caused them to conclude that he was not competent in the area.

After new teachers were hired to fill each of the vacancies, plaintiffs appealed the board's decisions to the tenure commission, charging that the action of the school board violated the teachers' tenure act. MCL 38.71 *et seq.;* MSA 15.1971 *et seq.* They argued alternatively that they were either certified and qualified for and thereby, under MCL 38.105; MSA 15.2005, entitled to the positions created, or, if not, that the school board deliberately reshuffled class assignments so as to create vacancies for which they were not qualified.

The tenure commission, with two dissenters, reversed the decisions of the school board. In the controlling opinion was stated:

"These Commissioners are aware of the opportunity school boards have, if they are so inclined, to circumvent the provisions of the Tenure Act by juggling assignments and *manipulating* course offerings in a manner which would cause the layoff or block the recall of a tenured teacher. The result of such action is the effective dismissal of a tenured teacher without observing the due process provisions of the Act. Upon appeal, we will scrutinize any such complaint to determine if a board's actions were made in good faith, and will discourage the employment of any new teacher when tenured teachers are on layoff.

"It is our finding, in the present cause, that Appellee did deny appellants Chester, Stevens and Rieckhoff the 'first vacancy' for which they were certified and qualified to teach, and did attempt to block the re-employment of Chester (and) Stevens * * * by *manipulating class schedules.*"

And, this decision was upheld by the Wayne

County Circuit Court. The dissenters on the tenure commission had held that plaintiffs were either not certified or not qualified to teach in the school year program as it was established. They opined:

"(T)he manner in which the recall of teachers was effected was a studied, deliberate, systematic process by which all facets of the teachers *[sic]* background and experience were considered prior to a decision on recall being made.

* * *

"These Commissioners rule that the Harper Woods School District has properly executed its duties and is in compliance with [MCL 38.105; MSA 15.2005] by exerting its discretion as to *qualification* in the recall of teachers on lay off due to necessary reduction of personnel." (Emphasis in original.)

These opinions relate a primary conflict which is the central issue raised here on appeal, whether the tenure commission has jurisdiction to review *de novo* decisions of a school board with regard to the reappointment of tenured teachers to vacancies which arise after a necessary reduction in personnel has caused their layoff.

Plaintiffs' claim to the teaching vacancies is based upon MCL 38.105; MSA 15.2005; which provides:

"Any teacher on permanent tenure whose services are terminated because of a necessary reduction in personnel shall be appointed to the first vacancy in the school district for which he is certified and qualified."

Even in this context, however, "certified" and "qualified" are not synonymous terms. The term "qualified" contemplates some level of competence above and beyond mere certification, the criteria of which must be established by the school board.

*Holton Public Schools v Farmer,* 77 Mich App 765, 772; 259 NW2d 219 (1977) (M. B. BREIGHNER, J., concurring). Accord, MCL 380.1231(1); MSA 15.41231(1) (formerly MCL 340.569; MSA 15.3569); *Anderson v Harper Woods Public School Dist,* 74 Mich App 227; 253 NW2d 718 (1977).

Where a school board is acting in its quasi-judicial capacity for removal of teachers for cause, its powers are greatly circumscribed by the teachers' tenure act. "Discharge or demotion of a teacher on continuing tenure may be made only for reasonable and just cause," MCL 38.101; MSA 15.2001, and only after providing a hearing which accords with MCL 38.102; MSA 15.2002 and MCL 38.104; MSA 15.2004. Further, MCL 38.137; MSA 15.2037 vests the tenure commission with such powers as are necessary to carry out and enforce the act's provisions, and MCL 38.139; MSA 15.2039 charges it with the duty of standing "as a board of review for all cases appealed from the decision of a controlling board". Review is *de novo. Long v Board of Education, Dist No 1, Fractional, Royal Oak Twp and City of Oak Park,* 350 Mich 324; 86 NW2d 275 (1957); *Rehberg v Board of Education of Melvindale, Ecorse Twp School Dist No 11,* 345 Mich 731; 77 NW2d 131 (1956). And, any final decision of a controlling board under the act is reviewable. MCL 38.121; MSA 15.2021. *Bennett v City of Royal Oak School Dist,* 10 Mich App 265; 159 NW2d 245 (1968), *lv den,* 381 Mich 755 (1968).

Thus, where the question is whether a tenured teacher may be dismissed for incompetence or improper conduct, he is entitled to a hearing before the school board and *de novo* review by the commission. See *Rehberg v Board of Education of Melvindale, Ecorse Twp School Dist No 11, supra.* This serves the purpose of the teachers' tenure act

which is "to eliminate capricious employment practices by school boards and protect teachers from arbitrary and unreasonable dismissals". *Pounder v Harper Woods Board of Education,* 72 Mich App 717, 723; 250 NW2d 504 (1976), *modified,* 402 Mich 91; 260 NW2d 287 (1977), *reh den,* 402 Mich 960 (1978).

Where, however, the question is whether, because of economic necessity, a particular teacher should be laid off in the first instance, he is not entitled to either notice of the charges against him or a hearing before the controlling school board. Such would constitute a useless gesture since neither his conduct nor performance is being called into question. *Steeby v School Dist of the City of Highland Park,* 56 Mich App 395; 224 NW2d 97 (1974). Here, review by the tenure commission would be limited to "whether the [controlling] board of education, under the guise of a 'necessary reduction in personnel', used circuitious methods in removing the [teacher] from its school system without the protections afforded by the teachers' tenure act". *Freiberg v Board of Education of Big Bay De Noc School Dist,* 61 Mich App 404, 416; 232 NW2d 718 (1975). *Goodwin v Board of Education of the School Dist of the City of Kalamazoo,* 82 Mich App 559; 267 NW2d 142 (1978). This is consistent with our reading of MCL 38.121; MSA 15.2021 which provides that "[a] teacher who has achieved tenure status may appeal any decision of a controlling board under this act". Since the act is silent with regard to what constitutes a "necessary reduction in personnel" such issue is not appealable unless cast in terms which allege that the "necessary reduction in personnel" was not made in good faith but amounted to a subterfuge to avoid the act's protections.

The case at bar, however, involves not the layoff but the reappointment of teachers after a "necessary reduction in personnel". Plaintiffs make no claim that the reduction was a subterfuge to avoid the teachers' tenure act. Rather, they contend that they have been denied their right of first recall under § 5 thereof, MCL 38.105; MSA 15.2005. They claim that the decision of the school board to fill the available vacancies with probationary teachers violated the act.

In this posture it is clear that plaintiffs' claim with regard to the board's decision is reviewable by the tenure commission. It falls squarely within the language of MCL 38.121; MSA 15.2021, "decision of a controlling board under this act". Accord, *Freiberg v Board of Education of Big Bay De Noc School Dist, supra.* However, while as in *Long* and *Rehberg,* review would be *de novo,* the tenure commission is only free to reexamine the facts as found by the school board. It may no more redefine the criteria of "qualification" set by the board than outline new standards of "certification" for the state. To set the parameters of qualification to fill vacancies is a function of the school board which may not be usurped by the tenure commission. It is a legislative rather than a quasi-judicial function.

"School districts, though State agencies, are governed locally and their controlling boards are chosen by the electorate." *Rehberg v Board of Education of Melvindale, Ecorse Twp School Dist No 11, Wayne County,* 330 Mich 541, 547; 48 NW2d 142 (1951). It is the school board which determines the criteria of teacher qualification, *Holton Public Schools v Farmer, supra,* because it is the local board, not the State Tenure Commission, who is charged with the duty of hiring duly

qualified teachers both initially and after layoff,
MCL 380.1231; MSA 15.41231 (formerly MCL
340.569; MSA 15.3569); *Anderson v Harper Woods
Public School Dist, supra.* In our opinion, construc-
tion of the tenure law in harmony with the ex-
pressed legislative policy to protect teachers from
arbitrary and unreasonable practices does not per-
mit a construction so liberal as to entirely destroy
the right of a local board to independently deter-
mine matters of policy in the administration of
local school affairs. Thus, in reviewing the deter-
mination of a school board that a tenured teacher
is not qualified for an available position, the ten-
ure commission is constrained to apply the criteria
of qualifications set out by the school board unless
that criteria itself is either arbitrary, unreasonable
or promulgated in bad faith. To further expand
the jurisdiction of the commission would be to
render it the legislator of all teacher qualification
at the expense of local control. If the Legislature
intended to deprive local governing bodies of legis-
lative control over teachers' qualification, that
intent should have been definitely stated in the
tenure act. *Cf., Rehberg v Board of Education of
Melvindale, Ecorse Twp School Dist No 11, Wayne
County, supra.*

Here, with regard to the criteria adopted by the
school board, the dissenting members of the tenure
commission noted that:

"Dr. Babich testified that a personnel procedure was
formulated to assist him and other members of the
administrative staff in making such decisions. He fur-
ther testified that the procedure was uniformly and
consistently followed in determining the qualifications
of all teachers for a vacancy. In determining which
teacher was certified and qualified, consideration was
given to such items as the teacher's certification, the
teacher's degree, whether or not the teacher had pur-

sued successfully curricula in specific subject areas for the potential teaching assignment, the teacher's endorsement from an appropriate state agency, evidence of further reinforcement of original endorsement, and demonstrated competency within his or her assigned level within the school district."

The majority of the commission completely disregarded this basis of qualification in favor of its own. Without ever considering whether the criteria adopted by the board was arbitrary, unreasonable or promulgated in bad faith, the majority erroneously chose to view qualification purely from a perspective of teaching experience. Indeed, its opinion is replete with reference to "new hirees". For example, with regard to Mr. Chester they state:

"The two English vacancies in dispute were filled by two newly hired, newly graduated teachers. Surely Chester was at least as qualified as a new hiree who had no teaching experience."

This we feel was improper.

While we do not hold its criterion unsuitable, the tenure commission failed to accord the board's determination of qualification the deference it was due. Although review of the facts is *de novo,* the commission is not free to substitute its idea of qualification for that of the board. Where the local board's definition is neither arbitrary, unreasonable nor promulgated in bad faith, it is binding upon the tenure commission. Only the facts may be found anew.

Moreover, MCL 380.1282; MSA 15.41282 (formerly MCL 340.583; MSA 15.3583) provides:

"The board of a school district shall establish and

carry on the grades, schools, and departments it deems
necessary or desirable for the maintenance and im-
provement of the schools, determine the courses of
study to be pursued, and cause the pupils attending
school in the district to be taught in the schools or
departments the board deems expedient."

Not unlike the determination of qualification, this
grant of authority to the local board carries with it
a commitment that the power will be exercised by
those duly elected by the voters of the school
district. Absent a finding that a decision of the
board with regard to class scheduling was arbi-
trary, unreasonable or made in bad faith, it may
not be overturned by the tenure commission.

In the case at bar, the opinion of the tenure
commission infers that class schedules were arbi-
trarily manipulated to block plaintiffs' re-employ-
ment, but such finding is predicated upon an erro-
neous determination of qualification. Before any
finding of manipulation can be made, it must first
be determined whether the school board's criteria
for qualification are either arbitrary, unreasonable
or promulgated in bad faith; if not, whether, ap-
plying the school board's standards, the complain-
ing teachers are qualified for any of the present
vacancies; and, if not, whether they would have
been qualified for vacancies which would have
occurred had there been no rescheduling. Since
such determinations were not made, any finding of
manipulation was premature. Therefore, the
proper disposition of this case is to reverse and
remand to the tenure commission for a determina-
tion of whether, in setting their standards for
reappointment, the school board acted arbitrarily,
unreasonably or in bad faith. If not, the criteria
adopted by the school board should control resolu-
tion of the subsequent issues.

Finally, it is of no moment that the school board examined "demonstrated competency" as a basis for qualification without affording a prior hearing. Where, as here, the status of the complaining teachers is unaffected and prompt, adequate administrative review is provided, MCL 38.121; MSA 15.2021, due process is not offended. *Fusari v Steinberg,* 419 US 379; 95 S Ct 533; 42 L Ed 2d 521 (1975), *reh den,* 420 US 955; 95 S Ct 1340; 43 L Ed 2d 433 (1975).

Reversed and remanded to the tenure commission for reconsideration consistent with this opinion.

Bashara, P.J., concurred.

Bronson, J. *(concurring in part, dissenting in part).* The tenure commission made two independent findings of fact in this case which must be examined separately. First, it found, contrary to defendant board's finding, that plaintiffs were qualified for certain teaching positions which became open at the beginning of the 1973–1974 school year. Secondly, it found that defendant board had manipulated class and teachers' schedules so as to exclude plaintiffs Stevens and Chester from positions for which they would have been qualified but for the rescheduling.

In regard to the first finding, I agree with the majority and would reverse the decision of the tenure commission. By statute, the school board is the body authorized to set the qualifications for its teachers. MCL 380.1231; MSA 15.41231, *Holton Public Schools v Farmer,* 77 Mich App 765, 772; 259 NW2d 219 (1977) (M. B. Breighner, J., concurring). The teacher tenure act does not empower the tenure commission to substitute its judgment as to teacher qualifications for that of the school

board. The tenure commission may only set aside
the school board's determination on teacher quali-
fication if it finds that the decision was arbitrary
or capricious or done in bad faith as a subterfuge
in order to circumvent the protections of the
teacher tenure act. *Cf. Freiberg v Board of Educa-
tion of Big Bay De Noc School Dist,* 61 Mich App
404; 232 NW2d 718 (1975). The tenure commis-
sion's substitution of its judgment for that of the
school board concerning plaintiffs' qualifications
for the open positions was improper. This portion
of the case must be remanded to the tenure com-
mission for a decision on whether the school board
acted arbitrarily or in bad faith in determining
that plaintiffs were not qualified for the open
positions.

The decision as to the teachers' qualifications for
the open positions, however, does not end the
tenure commission's inquiry. Assuming *arguendo*
that the school board had properly found that
plaintiffs were not qualified for the open positions,
the tenure commission is still empowered to deter-
mine whether the school board manipulated class
schedules in such a way as to deprive plaintiffs of
positions for which the *board* had determined they
were qualified. A school board cannot do through
indirection what it is prohibited from doing di-
rectly. Just as the board may not arbitrarily or in
bad faith determine that tenured teachers are
unqualified for the open positions, it also may not
arbitrarily or in bad faith manipulate the sched-
ule[1] so as to close positions for which the laid-off

[1] The case of *Freiberg v Board of Education of Big Bay de Noc
School District,* 61 Mich App 404; 232 NW2d 718 (1975), is instructive
on this point. The teacher in that case alleged that there was no
economic necessity which required termination of his employment,
but instead class schedules were juggled to eliminate him. This Court
found that the tenure commission had jurisdiction to hear this
complaint. This Court based its holding on one of the deleterious

teachers are qualified. The determination of whether the board acted in bad faith or as a subterfuge is a question for the tenure commission. *Cf. Freiberg, supra, Goodwin v Board of Education of the School Dist of the City of Kalamazoo,* 82 Mich App 559; 267 NW2d 142 (1978).

In the present case, the tenure commission made such a determination of bad faith. It held that the school board had itself determined that plaintiff Stevens was qualified to teach certain subjects, but had purposefully rearranged the schedule in such a manner as to combine the subjects for which he was qualified with subjects for which he was not qualified so as to deprive plaintiff of reentry into the school system.

In reviewing the factual findings of the tenure commission, this Court's function is not to make an independent determination of the facts, but merely to see whether the commission's conclusions are "supported by competent, material and substantial evidence on the whole record". (Emphasis omitted.) *Beebee v Haslett Public Schools,* 66 Mich App 718, 720; 239 NW2d 724 (1976), *remanded* 401 Mich 954 (1977), quoting Const 1963, art 6, § 28. A review of the record convinces me that the commission's finding of bad faith on the part of the board towards plaintiff Stevens was supported by the record.

Mr. Stevens had an undergraduate major in

practices which the teacher tenure act sought to prevent, namely, the discharge of teachers "in order to effect economies either by diminishing the number of teachers and increasing the amount of work assigned to those retained, or by creating vacancies to be filled by lower salaried, inexperienced employees." 37 Mich L Rev 430, 431 (1939), quoted in *Freiberg, supra* at 413.

The present case is merely the reverse of *Freiberg.* Instead of juggling the schedule to terminate a teacher, the charge here is that the schedule was juggled to keep the teacher from returning. In either case, the tenure commission is empowered to decide the question of manipulation.

general science. He was certified to teach general science in grades 1 through 12 and had taught general science in defendant school district for the previous 14 years primarily in grades 8 through 12. Defendant school board conceded that he was qualified to teach general science. He was not rehired for the 1973–1974 school year because the open position called for someone who could teach four science courses and one chemistry course and plaintiff Stevens was not deemed qualified to teach chemistry. During the 1972–1973 school year there were two teachers, one who taught five courses in general science, and one who taught four chemistry courses and one science course. Before the start of the 1973–1974 year the school district decided to transfer one chemistry course from the chemistry teacher and give it to the science teacher because it was allegedly dissatisfied with the chemistry teacher. It was this rescheduling that the tenure commission found as a subterfuge to deprive plaintiff Stevens of reentry into the school system. I cannot hold this finding erroneous.

The chemistry teacher had taught for defendant school district for many years, but it was only when plaintiff Stevens sought to be rehired that defendant school district decided to take away one of the teacher's chemistry classes. Secondly, if defendant school district was truly dissatisfied with the way the teacher taught chemistry and made the transfer to improve the quality of education, why did it transfer only one chemistry class? The transfer of one class would be sufficient to deprive plaintiff Stevens of reentry, but it would not be sufficient to upgrade the chemistry program. The allegedly deficient chemistry teacher would still be in charge of the chemistry program

and the majority of students would still have to take chemistry from him. Only a tiny minority of students would be given the opportunity to have a supposedly superior teacher. The school district's reasoning is arbitrary at best, and at worst seems to be a concerted effort to deprive plaintiff of a chance to reenter the system.

No administrator is going to admit to arbitrary or bad faith decisions. Such decisions can only be determined by viewing the circumstances of each individual case. The tenure commission is the body with the expertise in the field of teacher disputes. See *Lipka v Brown City Community Schools,* 59 Mich App 175; 229 NW2d 362 (1975), *modified* 399 Mich 704; 252 NW2d 770 (1977), *reh gtd* 400 Mich 984 (1977). This expertise gives the commission familiarity with the ways in which schools operate and places it in an advantageous position when determining if schedules can be manipulated and how this manipulation can be accomplished. The commission's judgment in this area is entitled to great respect and should not lightly be set aside by this Court. Since the facts in this case show, at the very least, that the school board's action was questionable, the commission's expertise in this complex area should be honored and its determination of arbitrary or bad faith manipulation should be upheld.

The final issue in this case concerns the school board's failure to rehire plaintiff Chester. Mr. Chester was laid off prior to the 1972–1973 school year when due to economic necessities the district had to totally eliminate its physical education program. Prior to his lay off plaintiff Chester had taught physical education in defendant school district for 21 years. The school board concedes that he was qualified to teach physical education. Due

to the improved financial picture of the school district for the school year 1973–1974 the district reinstated its physical education program although on a more limited scale.

The reinstallation of the program created one vacancy in the physical education department. The school board gave that position to Mr. Goodwin, a teacher with six years' experience at the school who formerly taught physical education with Mr. Chester but who was transferred to another department when the original cut back was made. The school board gave Mr. Goodwin the vacancy claiming that it was contractually bound by the terms of the collective bargaining agreement to assign any position in a reopened department to a teacher who had been transferred out of the department but requested to be transferred back. Mr. Goodwin made such a request.

The school board claims that there was no vacancy because it was contractually obligated to reinstate Mr. Goodwin. This is incorrect. A vacancy was created when the physical education program was reinstated. The question becomes what is the interrelation between the teacher tenure act and the collective bargaining agreement. The teacher tenure act specifically states that a tenured teacher laid off due to necessary reduction in personnel must be appointed to the first vacancy for which he is certified and qualified. MCL 38.105; MSA 15.2005. The act also states that the rights conferred by the act cannot be waived by contract. MCL 38.172; MSA 15.2054. This provision would indicate that the teacher tenure act takes precedence over any teacher contract or collective bargaining agreement. When the rights under the collective bargaining agreement would operate in such a manner as to deprive a teacher of his rights under the tenure act, the collective

bargaining rights must yield.[2] Since the reinstatement of the physical education program created a vacancy for which plaintiff Chester was qualified, he was entitled to the position under the provisions of the teacher tenure act. The collective bargaining contract cannot be used as a means of depriving plaintiff of his rights under the statute.

## CONCLUSION

I would affirm the tenure commission's second finding of manipulation as to plaintiffs Stevens and Chester and order them reinstated. The tenure commission overstepped its authority in independently determining teacher qualifications for the open positions and this portion of their decision is reversed. Since plaintiffs Stevens and Chester would be reinstated under the second finding, the commission need only decide on remand whether the school board acted arbitrarily or in bad faith in determining that plaintiff Rieckhoff was not qualified for the open position.

---

[2] This does not mean that a currently employed teacher could never be given the right of first assignment. It only means that this right cannot be granted if it would deny a laid-off teacher of the only position for which he is qualified. For example, the currently employed teacher could be given the vacancy for which the laid-off teacher was qualified if there is another vacancy for which the teacher was also qualified. The first assignment right would only be denied in those cases when, as here, the assignment would close the only position for which the laid-off teacher is qualified.