FREIBERG v BOARD OF EDUCATION OF BIG BAY DE NOC
SCHOOL DISTRICT

Docket No. 78-1691. Submitted January 10, 1979, at Lansing.—Decided July 23, 1979. Leave to appeal applied for.

Carl L. Freiberg, a tenured teacher, was dismissed by the Big Bay De Noc Board of Education, allegedly for financial, legal and enrollment reasons requiring a necessary reduction in personnel. At a State Tenure Commission hearing, Freiberg claimed that the school board used the subterfuge of an economic layoff when the real reason for his dismissal was his performance, leadership and influence in the teacher's union and that the board, through its superintendent, had manipulated class schedules to eliminate his position. The Tenure Commission refused to review these allegations on the ground it lacked jurisdiction to review a school board's budgetary decisions. Ingham Circuit Court, James T. Kallman, J., reversed the Tenure Commission and the Court of Appeals affirmed Judge Kallman's decision. *Freiberg v Board of Education of Big Bay De Noc School District,* 61 Mich App 404; 232 NW2d 718 (1975). The case was then remanded to the Tenure Commission to determine *de novo* whether the defendant board of education, under the guise of a necessary reduction in personnel, used circuitous methods in removing plaintiff without the protection afforded by the teacher's tenure act. The commission found that the board had laid plaintiff off in good faith due to financial necessity, although it acknowledged the animosity that existed between plaintiff, the superintendent and members of the school board. Ingham Circuit Court, James T. Kallman, J., affirmed the decision of the Tenure Commission. Plaintiff appeals. *Held:*

Agency decisions should be supported by competent, material

REFERENCES FOR POINTS IN HEADNOTES

[1] 2 Am Jur 2d, Administrative Law §§ 545-549, 688-690.

[2] 2 Am Jur 2d, Administrative Law §§ 688-690.

68 Am Jur 2d, Schools §§ 208, 210.

[3] 68 Am Jur 2d, Schools §§ 212-214.

Elements and measure of damages in action by schoolteacher for wrongful discharge. 22 ALR3d 1047.

and substantial evidence and the Court of Appeals examines the whole record to determine if such evidence exists. The State Tenure Commission's affirmance of the school board's dismissal of plaintiff for financial, legal and enrollment reasons requiring a reduction in personnel is not supported by substantial evidence on the whole record. Numerous and significant contradictions appear in the record which directly refute any reason for a financial layoff. The board of education manipulated teaching schedules to effectively dismiss plaintiff under the guise of a necessary reduction in personnel in violation of the teacher's tenure act.

Reversed and remanded with instructions.

1. SCHOOLS AND SCHOOL DISTRICTS — APPEAL AND ERROR — ADMINISTRATIVE LAW — COURT OF APPEALS — STATE TENURE COMMISSION — SUBSTANTIAL EVIDENCE STANDARD — FINDINGS OF FACT — REVIEW.

A decision of the State Tenure Commission should be supported by competent, material and substantial evidence; an allegation that it is not, requires the Court of Appeals to examine the whole record to determine whether such evidence exists and this examination must avoid invasion of the agency's fact-finding province and yet afford a meaningful review of its decision.

2. SCHOOLS AND SCHOOL DISTRICTS — STATE TENURE COMMISSION — APPEAL AND ERROR — TENURED TEACHERS — DE NOVO REVIEW — SUBSTANTIAL EVIDENCE STANDARD.

The issue of schedule manipulation as a subterfuge to dismiss a qualified, tenured teacher by eliminating his position is reviewable *de novo* by the State Tenure Commission and the decision of the tenure commission is subject to scrutiny on appeal for compliance with the requirement that an agency decision should be supported by competent, material and substantial evidence.

3. SCHOOLS AND SCHOOL DISTRICTS — STATE TENURE COMMISSION — IMPROPER TEACHERS DISCHARGE — BACK PAY — EVIDENCE — MITIGATION — BURDEN OF PROOF.

A case in which the improper discharge of a teacher is reversed by the Court of Appeals requires a remand to the State Tenure Commission for determination of the amount of back pay with instructions (i) to deduct from the salary the teacher would have earned all wages he actually earned that he would not have earned if he were employed as a teacher, and (ii) to consider any evidence the school district offers that the teacher, through exertion of proper efforts, could have earned more; the

burden on the mitigation of back pay issue is on the school district, not the teacher.

*Foster, Swift, Collins & Coey, P.C.* (by *Lynwood E. Beekman),* for plaintiff.

*Keller, Thoma, Schwarze & Schwarze, P.C.,* for defendant.

Before: V. J. BRENNAN, P.J., and M. F. CAVANAGH and C. J. HOEHN,* JJ.

PER CURIAM. This is the second time this controversy has been presented to this Court for review.

Plaintiff, Carl L. Freiberg, is a tenured teacher who had been continuously employed by the Big Bay De Noc Board of Education since the 1967-68 school year. At the beginning of the 1971-72 school year, plaintiff was dismissed from his position, allegedly for financial, legal and enrollment reasons requiring a necessary reduction in personnel. Plaintiff requested a hearing pursuant to the teachers' tenure act on the grounds that the defendant board of education was in fact attempting to dismiss him because of his performance, leadership and influence in the teachers' union by use of the subterfuge of an economic layoff. He further asserted that the board, through its superintendent, had manipulated class schedules to eliminate his position. The Teacher Tenure Commission declined to review plaintiff's allegations, on the grounds it lacked jurisdiction to review a school board's budgetary decisions. The *circuit court reversed this* decision, and this Court affirmed. The case was remanded to the Teacher Tenure Commission to determine *de novo* whether the defendant board of

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

education, under the guise of a "necessary reduction in personnel", used circuitous methods in removing the plaintiff from its school system without the protections afforded by the teachers' tenure act. *Freiberg v Board of Education of Big Bay De Noc School Dist*, 61 Mich App 404, 416; 232 NW2d 718 (1975).

On remand, the Teacher Tenure Commission, over the dissent of two of its members, found that the board of education had laid off plaintiff in good faith due to financial necessity, although it acknolwedged the animosity that existed between the superintendent, members of the school board and the plaintiff. Plaintiff appealed this adverse decision to the circuit court, which affirmed. From this affirmance, plaintiff appeals to this Court as of right.

When it is alleged, as in the case at bar, that an agency's decision is not supported by competent, material and substantial evidence, the reviewing court must examine the whole record to determine whether such evidence exists. This examination must both avoid invasion of the agency's fact-finding province and yet afford the plaintiff "meaningful review" of its decision. The parameters of this review were delineated in *Michigan Employment Relations Commission v Detroit Symphony Orchestra, Inc*, 393 Mich 116, 124; 223 NW2d 283 (1974).

"What the drafters of the Constitution intended was a thorough judicial review of administrative decision, a review which considers the whole record—that is, both sides of the record—not just those portions of the record supporting the findings of the administrative agency. Although such a review does not attain the status of *de novo* review, it necessarily entails a degree of qualitative and quantitative evaluation of evidence considered by an agency."

We have carefully examined the record before us with these admonitions in mind, and conclude that the Tenure Commission's decision is not supported by substantial evidence on the whole record.

Numerous and significant contradictions appear in the record which directly refute the financial, enrollment and legal difficulties asserted by the board of education to justify plaintiff's layoff. Testimony from other witnesses differs sharply from that of Superintendent Stupak, who was instrumental in procuring plaintiff's dismissal. Absent Stupak's testimony this record would contain scant, not substantial, evidence to support the commission's findings. Stupak's personal animus for plaintiff was noted by the majority in its opinion and the dissent characterized it in the following language:

"Contradictions between the testimony of the Superintendent and four other witnesses, including the Appellant, appear on the record. In addition, two witnesses (Freiberg and Pelletier) testified that Superintendent Stupak told them that he would lie under oath to protect his interest. There seemed to be no disagreement in this Commission that Superintendent Stupak was not worthy of belief."

The testimony concerning the school district's purported financial difficulties is replete with direct contradictions. For example, although the superintendent testified that State Rep. Varnum had informed him that state aid would decrease for the 1971-1972 school year, Rep. Varnum testified before the Tenure Commission that in fact he told the superintendent in June, 1971, state aid would probably increase, or at least remain stable. This alleged decrease in aid was offered by the board as

one of the bases for its projected financial difficulties. Furthermore, the Intermediate School Superintendent McClintock informed Mr. Stupak in April or May, 1971, of the county equalized value for assessment purposes, which for the past three years at least had equaled the state equalized value. For 1971-1972, this equalized value increased approximately $600,000. It also appears from the uncontradicted record that the relations between the superintendent and plaintiff became especially strained at the end of the previous school year due to plaintiff's inquiry into irregularities in payments from school funds made by Mr. Stupak. Lastly, despite its financial difficulties, the school district expanded existing programs, added a new program in home economics to its curriculum and hired a new teacher for this addition, without apparently eliminating any previously existing programs.

We also note that class enrollment, on the opening school day when the school superintendent informed plaintiff of his economic "layoff", was 610 students, a gain of 25 over the projected figure estimated the week before school opening, as well as an increase of 9 students over the 1970-1971 school year.

Finally, it appears from the record that the asserted legal problem underlying the plaintiff's continued employment primarily involved a scheduling problem based on an overlap of teachers with a certification identical to plaintiff's but with more seniority. This overlap existed only if plaintiff continued teaching in the high school. However, plaintiff was also certified to teach all subjects in the seventh and eighth grades, and had some teaching experience on that level. No vacancy existed in these grades, unless Mr. Soorus, a

seventh grade teacher, was scheduled to fill an existing high school vacancy in history. The vacancy in question was within Mr. Soorus' certification (political science and history); he had also verbally requested this assignment from Superintendent Stupak. Nevertheless, as the high school principal testified, these assignments were not made, a new teacher was hired for the vacant position, and plaintiff was laid off.

We recognize the particular expertise of a school board in making educational decisions of this type. However, under the circumstances of this case and record evidence directly contradicting the school board's other justifications for eliminating plaintiff's position, we do not find this testimony substantially supports the Tenure Commission's decision.

The recent holding by another panel of this Court in *Chester v Harper Woods School Dist,* 87 Mich App 235; 273 NW2d 916 (1978), does not limit our review in the instant case. In *Chester, supra,* the issues on appeal primarily presented a question of the Tenure Commission's power to substitute its judgment for a school district's in defining qualifications for open teaching positions. The panel concluded that, absent bad faith or arbitrariness, a school district's definition of "qualified" is binding on review and may not be set aside. In addition, the teachers' allegations of schedule juggling were also predicated on the issue of qualifications and no claim of subterfuge to circumvent the teachers' tenure act was made. In the instant case, plaintiff's qualifications are not in dispute. Rather, this Court is squarely presented with the issue of schedule manipulation as a subterfuge to dismiss a qualified, tenured teacher by eliminating his position. As the dissent in *Chester,*

*supra,* points out, relying on the first opinion in *Freiberg, supra,* such an allegation of duplicity by a school board is reviewable *de novo* by the Teacher Tenure Commission; its decision is thus subject to scrutiny on appeal for compliance with the substantial evidence test.

Accordingly, we find that the defendant board of education manipulated teaching schedules to effectively dismiss plaintiff under the guise of a necessary reduction in personnel, in violation of the teachers tenure act. We reverse the State Teacher Tenure Commission's decision and order the reinstatement of plaintiff, with back pay.

Having reversed the Tenure Commission, we order plaintiff's reinstatement with reparation of lost salary pursuant to MCL 38.103; MSA 15.2003. In accordance with *Shiffer v Board of Education of Gibraltar School Dist,* 393 Mich 190; 224 NW2d 255 (1974), we remand to the Tenure Commission for determination of the amount of the back-pay award in this case with instructions (i) to deduct from the "salary" plaintiff would have earned all wages he actually earned that he would not have earned if he were employed as a teacher, and (ii) to consider any evidence the school district offers that plaintiff, through exertion of proper efforts, could have earned more.

The burden on the mitigation issue is on the school district, not the teacher.

Reversed and remanded to the Tenure Commission. Costs to plaintiff.