PORTLAND PUBLIC SCHOOLS BOARD OF EDUCATION v
DOWLING

Docket No. 74162. Submitted June 12, 1984, at Grand Rapids.—Decided November 7, 1984. Leave to appeal applied for.

Alyce Dowling, a tenured middle school home economics teacher, was laid off by the Board of Education of the Portland Public Schools because of a reduction in personnel. A position in middle school mathematics was held by a probationary teacher, but the school board refused to assign Dowling to the position because she did not meet the board's qualification standards as embodied in a written board policy not to assign a teacher outside his or her major or minor fields of study unless there is mutual consent. Dowling does not have a major or minor in mathematics. She appealed to the State Tenure Commission, claiming that the qualification requirement was arbitrary and capricious on its face or, alternatively, as it was applied to her. The State Tenure Commission found in favor of Dowling. The school board petitioned the Ionia Circuit Court for review of the commission's decision. The court, James L. Banks, J., reversed the tenure commission, finding no support for the commission's holding that qualification standards must be formally adopted, predetermined and published, that the mutual consent provision was not arbitrary and capricious and that the commission's finding was not supported by the record. Dowling appealed. *Held:*

1. The State Tenure Commission must give deference to a school board's determination of qualification and may not substitute its own criteria for those of the board. The commission has no authority to require that qualification criteria be reduced to writing.

2. The school board policy involved herein does set forth a

REFERENCES FOR POINTS IN HEADNOTES
[1-3] 68 Am Jur 2d, Schools §§ 129, 149 *et seq.*
    What constitutes "incompetency" or "inefficiency" as a ground for dismissal or demotion of public school teacher. 4 ALR3d 1090.
[3] 68 Am Jur 2d, Schools § 204.

qualification requirement. Furthermore, the policy applies to laid-off teachers as well as to those currently employed.

3. The trial court properly accepted the tenure commission's findings of fact.

4. The school board's decision not to assign Dowling to the mathematics position was neither arbitrary nor capricious. The tenure commission's decision to the contrary was not supported by competent, material and substantial evidence on the whole record.

5. The "mutual consent" provision is not invalid on its face, nor were the qualification criteria applied to Dowling arbitrarily or capriciously.

Affirmed.

1. SCHOOLS — STATE TENURE COMMISSION — TEACHER QUALIFICATIONS.

The State Tenure Commission, in determining whether a tenured teacher is qualified for a position, must apply the criteria of qualification set out by the school board unless those criteria are arbitrary, unreasonable or promulgated in bad faith; the commission must give deference to the board's determination of qualification and may not substitute its own criteria of qualification for those of the board.

2. SCHOOLS — STATE TENURE COMMISSION — TEACHER QUALIFICATIONS.

The State Tenure Commission has no authority to require that school boards reduce to writing their criteria for qualification of teachers.

3. SCHOOLS — STATE TENURE COMMISSION — REVIEW.

The standard of review to be applied to a decision of the State Tenure Commission is whether the decision is supported by competent, material and substantial evidence on the whole record (Const 1963, art 6, § 28).

*Thrun, Maatsch & Nordberg, P.C.* (by *Thomas J. Nordberg* and *David J. Riewald),* for petitioner.

*Foster, Swift, Collins & Coey, P.C.* (by *Stephen O. Schutz),* for respondent.

Before: R. B. Burns, P.J., and D. E. Holbrook, Jr. and G. R. Deneweth,* JJ.

Per Curiam. Defendant appeals a September 15, 1983, judgment of the circuit court, which reversed a July 19, 1982, decision and order of the State Tenure Commission. We affirm.

Defendant, a tenured middle-school home economics teacher, was employed by plaintiff. Her services were terminated for the 1981-1982 school year because of a reduction in personnel. Defendant is certified to teach all subjects in grades 7 and 8, including a middle-school mathematics position held by a probationary teacher. Defendant does not have a major or minor in mathematics. Plaintiff refused to assign defendant to the mathematics position and defendant appealed to the State Tenure Commission. Plaintiff claimed that defendant did not meet the qualification standards embodied in Board Policy 4115:

"*Assign and Transfer*
"The Board shall assign teachers according to their area of greatest competence, as determined by the Board, and will not assign a teacher outside the scope of his teaching certificate or his major or minor fields of study unless there is mutual consent."

Defendant claimed the qualification was arbitrary and capricious on its face or as applied in her case.

The majority of the tenure commission found in favor of defendant. Two commission members would have denied defendant's claim. The dissenters agreed with the majority that the "mutual consent" provision of the qualification standard was vague and arbitrary but disagreed that this objectionable part could not be severed from the qualification.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

On appeal, the circuit court reversed the commission's decision. The court found no case law support for the commission's position that qualification standards must be formally adopted, predetermined and published. The court found that the "mutual consent" provision was not arbitrary and capricious and that the commission's determination that plaintiff applied the provision to defendant's case arbitrarily was not supported by the commission's finding of fact. Additionally, the court found that, assuming the "mutual consent" provision was arbitrary and capricious, it was severable from the qualification standard.

Section 5 of the teacher tenure act provides that any tenured teacher shall be appointed to the first vacancy in the school district for which he or she is certified and qualified. MCL 38.105; MSA 15.2005. Defendant argues that plaintiff has not promulgated qualifications for the disputed position, other than certification, and that Policy 4115 does not govern assignments of teachers who have not been laid off. Defendant relies upon *Chester v Harper Woods School Dist*, 87 Mich App 235; 273 NW2d 916 (1978), for the proposition that before a "qualification" may be valid, it must be "set out by the school board" and promulgated.

We do not read *Chester* as requiring such procedural formalities. Rather, the *Chester* Court held that the State Tenure Commission, in determining whether a tenured teacher is qualified for a position, must apply the criteria of qualification that the school board has set out unless those criteria are arbitrary, unreasonable or promulgated in bad faith. *Id.,* 246. The commission must give deference to a school board's determination of qualification, and may not substitute its own criteria of qualification for those of the school board. *Id.,* 247. Indeed, the qualification criteria upheld in *Chester*

had not been reduced to writing, and thus not promulgated. The State Tenure Commission has no authority to require that school boards reduce qualification criteria to writing. *Farmer v Holton Public Schools,* 138 Mich App 99; NW2d (1984).

Moreover, we find that the policy at issue does set forth a "qualification" under § 5. The policy establishes two qualification criteria, certification and the teacher's major or minor field of study. These are presumptive minimum qualifications to teach a specific subject. The portion of the policy relating to mutual consent recognizes that a person may be qualified to teach a subject outside his or her major or minor field of study, but the existence of such a qualification would have to be established on a case-by-case basis to the satisfaction of both parties.

In response to defendant's claim that the policy does not contain qualification criteria, but is merely a policy relating to the assignment and transfer of currently employed teachers, we agree with the circuit court that the policy is dual-purposed and establishes qualifications for the recall of a laid-off teacher.

Defendant next argues that the circuit court failed to give due deference to the findings of fact of the State Tenure Commission and, therefore, failed to apply the proper standard of review.

The standard applicable to a review of a decision of the tenure commission is whether the decision is supported by "competent, material and substantial evidence on the whole record". *Comstock Public Schools v Wildfong,* 92 Mich App 279, 284-285; 284 NW2d 527 (1979); Const 1963, art 6, § 28. The circuit court disagreed with the tenure commission on three issues: (1) whether the "mutual consent" standard was arbitrary or capricious on its face: (2) whether the "mutual consent" standard was sever-

able from the other portions of the policy; and (3) whether the "mutual consent" standard was applied to defendant in an arbitrary or capricious manner.

Our review of the circuit judge's opinion convinces us that the circuit judge was aware of the facts as found by the commission and accepted those factual findings. The judge merely disagreed with the State Tenure Commission's application of law to those facts. Defendant's arguments on this issue are without merit.

Defendant also argues that the circuit court erred when it overturned the State Tenure Commission's finding that the plaintiff's policies were arbitrarily and capriciously applied to defendant. Defendant claims, again, that the circuit court failed to apply the proper standard of review. In addition, defendant contends that the circuit court's decision on the issue was clearly erroneous. We disagree.

In support of its decision that the "mutual consent" clause was arbitrarily applied, the tenure commission noted that Robert Williams, a physical education teacher, was permitted to teach two seventh grade classes in practical mathematics during the 1980-1981 school year. The tenure commission did not consider that the assignment was a temporary response to the need to fill out Williams' teaching assignment. Further, Williams also possessed a business minor. In addition, Williams had taught mathematics a number of years prior to his first employment in plaintiff's school system. Also, plaintiff's superintendent of schools testified that he would not assign Williams to the full-time mathematics teaching position at issue in this appeal because he did not believe Williams was qualified. The distinction is that the full-time mathematics teaching position involves the teach-

ing of applied mathematics, while Williams taught practical mathematics.[1]

The State Tenure Commission also supports its decision on the grounds that plaintiff never reviewed defendant's entire transcript. However, the State Tenure Commission failed to note that the superintendent requested to see defendant's transcripts and she failed to provide the superintendent with all of her transcripts. Defendant cannot fault plaintiff's failure to review a transcript that she failed to provide after request.

The decision of the tenure commission ignores the fact that an assignment of a teacher outside his or her major or minor field of study or certification is a relatively rare event at plaintiff's school system. In recent years there appear to have been only three such instances. In addition to Williams, Jonathon Snellenberger has taught outside his major or minor field of study in the middle school for four years, teaching practical and basic math to seventh and eighth graders. He has not taught applied math. John Clarey, the interim superintendent and former middle school principal, testified that he would not consider assigning Snellenberger to teach applied math in the middle school. Snellenberger majored in physics in college, a subject which requires a mathematics background.

Georgia Sharp was assigned to teach one section in health, outside her major or minor field of study, during the 1980-1981 school year. Sharp had previously taught health classes in another

[1] Appellee offers three types of mathematics courses in its middle school: basic math, practical math, and applied math. Basic math is the same as the practical math but the basic math classes are taught at a slower pace; basic math is a remedial class for low achievers. Applied math is a more abstract course, geared for the more advanced students. The reading level is more difficult in applied math and the course is generally more complicated than practical or basic math.

school system. Finally, had Sharp not been given the one-hour-per-day health class assignment the students would have been assigned to a study hall.

The tenure commission appears to have overlooked the fact that plaintiff went to great lengths to determine if defendant could be placed in the mathematics teaching position, or some other position. However, the senior member of the middle school mathematics faculty, Mary Bouck, advised interim superintendent Clarey that the position required somebody who was well trained in mathematics. In addition, then-superintendent Laverne Lampen met with representatives of the Michigan State University mathematics department, who advised him that a person without a mathematics background would not be competent to teach the course at issue. Lampen advised defendant that she would strengthen her chances of receiving the mathematics position if she increased her skills by taking a graduate level mathematics class during the summer of 1980. Although defendant did take such a course, she did not inform plaintiff of that until November of 1980, well after her layoff went into effect.

Finally, the tenure commission appears to have ignored defendant's academic performance in the subject of mathematics. The record reveals that defendant took a two-semester basic freshman math course from Ohio State University and received a grade of "D" in one semester and a grade of "E" in the other semester. Further, in the graduate course mentioned above, entitled "Topics for Middle School Teachers in Math", defendant received a grade of "C+", which is a failing grade in graduate school.

For these reasons, we find that the plaintiff's decision not to assign defendant to teach middle school mathematics, including applied mathemat-

ics, was neither arbitrary nor capricious. The tenure commission's decision to the contrary is not supported by competent, material and substantial evidence on the whole record.

Defendant's final argument is that the circuit court erred in reversing the tenure commission's determination that the defendant's policy was invalid on its face.

We find that the commission's conclusion that the "mutual consent" clause is facially invalid flows from its erroneous view that all qualification standards must be written. We have rejected that position. *Farmer v Holton Public Schools, supra.* The "mutual consent" clause allows plaintiff to apply criteria other than certification and the major or minor field of study, such as extensive course work at the undergraduate level not resulting in a major or minor, in determining a teacher's qualification. The "mutual consent" clause is neither more nor less arbitrary than the underlying criteria used in determining whether to give that consent.

A close reading of *Chester v Harper Woods School Dist, supra,* indicates that the proper inquiry for the tenure commission to make is to determine whether or not a school board *acted* arbitrarily, unreasonably, or in bad faith in setting a standard. If the school board did not so act, its criteria must be used. *Id.,* 248. The record does not support a conclusion that plaintiff acted arbitrarily, unreasonably, or in bad faith in adopting the "mutual consent" clause.

Under such circumstances, the next question for the State Tenure Commission is whether the school board applied the qualification criteria to the teacher arbitrarily or capriciously. We have found above that the plaintiff did not apply its

qualification criteria arbitrarily or capriciously in this case. Accordingly, the circuit court decision is affirmed.

Affirmed. No costs, a public question.