BOARD OF EDUCATION FOR THE GARDEN CITY SCHOOL
DISTRICT v BRISBOIS

BOARD OF EDUCATION FOR THE GARDEN CITY SCHOOL
DISTRICT v SOLOMONE

Docket Nos. 93153, 93154. Submitted May 7, 1987, at Detroit. Decided
August 12, 1987. Leave to appeal denied, 429 Mich 897.

Nancy Brisbois and Larry Solomone are among a group of teach-
ers who were laid off by the Board of Education for the Garden
City School District, ostensibly because of declining enroll-
ments, and then offered half-pay positions pursuant to the
provisions of an Early Retirement Incentive (ERI) program
negotiated between the school board and the teachers' union.
The teachers filed petitions with the State Tenure Commission,
which ruled that the implementation of the ERI constituted a
subterfuge and violated the teacher tenure act. The school
board appealed to the Wayne Circuit Court, which reversed the
tenure commission's decisions and orders, Roland L. Olzark, J.
The teachers filed two appeals, arguing (1) that the placement
of the ERI applicants in positions which the teachers were
certified to teach was a subterfuge to enable the school board to
lay off the teachers and (2) that, by laying the teachers off and
then rehiring them at half pay to replace other, retiring
teachers, the school board had demoted the teachers without
the procedural safeguards mandated by the teacher tenure act.
The appeals have been consolidated.

The Court of Appeals *held:*

1. The State Tenure Commission's determination that the
school board engaged in a subterfuge was not supported by
competent, material and substantial evidence. There was no

REFERENCES

Am Jur 2d, Schools §§ 149 *et seq.*; 167, 168, 208 *et seq.*

Construction and effect of tenure provisions of contract or statute
governing employment of college or university faculty member.
66 ALR3d 1018.

Elements and measure of damages in action by schoolteacher for
wrongful discharge. 22 ALR3d 1047.

evidence to support the finding that the school board knew of available vacancies at the time it laid the teachers off.

2. The laying off and rehiring of the teachers did not amount to a demotion. The school board was merely employing properly laid off teachers as half-pay replacements for teachers who retired early.

3. Neither the collective bargaining agreement nor the implementation of the agreement violates the teacher tenure act.

Affirmed.

1. SCHOOLS — SCHOOL DISTRICTS — DISMISSAL OF TEACHERS — TEACHER TENURE ACT.

A school board may not engage in a subterfuge or circuitous methods of removing a teacher from its school system in order to avoid the protections afforded by the teacher tenure act (MCL 38.71 *et seq.*; MSA 15.1971 *et seq.*).

2. SCHOOLS — TEACHERS — LAYOFFS — REHIRING.

The implementation of an early retirement incentive program negotiated between a school board and a teachers' union whereby teachers were laid off from their teaching positions ostensibly because of declining enrollments and then offered half-pay positions as replacements for other teachers who were retiring early under the incentive program was not a subterfuge on the part of the school board for removing teachers from the school system in order to avoid the protections afforded by the teacher tenure act where there was no evidence that the school board knew of available vacancies at the time it laid the teachers off.

3. SCHOOLS — TEACHERS — LAYOFFS — DEMOTIONS — TEACHER TENURE ACT.

Teachers who were laid off in good faith at a time when the school board, the teachers, and the teachers' union all knew that certain layoffs were inevitable and then were rehired as half-pay replacements for other teachers who were retiring early pursuant to an early retirement incentive program negotiated by the school board and the teachers' union were not demoted within the meaning of the teacher tenure act (MCL 38.74; MSA 15.1974).

*Miller, Canfield, Paddock & Stone* (by *James E. Tobin*), for plaintiff.

*Gayle S. Boesky,* for defendants.

Before: Beasley, P.J., and Hood and E. E. Bor-radaile,* JJ.

Per Curiam. Appellants in both of these appeals are teachers who were laid off from their teaching positions, ostensibly because of declining enrollments, and then offered half-pay positions pursuant to the provisions of an Early Retirement Incentive (ERI) program negotiated between the Board of Education for the Garden City School District and appellants' union. Appellants filed petitions before the State Tenure Commission, which eventually ruled both that the implementation of the ERI constituted a subterfuge and that it violated the teacher tenure act.[1] The board appealed to the Wayne Circuit Court, which reversed the tenure commission's decisions and orders in both cases. Appellants appeal from the trial court's decision as of right.

The union originally proposed the ERI during contract negotiations in November and December of 1981 because of its concerns regarding impending layoffs due to anticipated enrollment decline. The board was originally unwilling to add an additional expense to its budget, but agreed to implement the program under conditions which would not add any extra expense. The provision ultimately included in the collective bargaining agreement permitted a teacher who had at least ten years seniority and was not on layoff status to retire early and be entitled to one-half of his or her salary and benefits for the next two years. The remaining portion of the salary would be placed in a "pool" with that of other retirees. Then, the teachers who had been laid off would be given the opportunity to take "half-pay" positions, replacing

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] MCL 38.71 et seq.; MSA 15. 1971 et seq.

the early retirees and receiving compensation based on the average monies available in the pool. This amounted to approximately one-half of their prelayoff salaries. A teacher who wished to retire and take advantage of the ERI program for the 1982-83 school year was required to notify the board by May 28, 1982. A maximum of twenty-five teachers could elect to retire pursuant to the ERI program.

Deliberations over projected teacher layoffs for the 1982-83 school year began in December, 1981, and continued until March, 1982. The teachers who were to be laid off for 1982-83 were notified in early April of 1982, which was according to the routine followed since 1976. Layoffs were made primarily on the basis of seniority and certification, although the contract provided additional bases which were also used. Forty-three teachers were notified that they would be laid off.

The staff for the school year was not finally identified until the first day of school for the fall. However, the collective bargaining agreement required that the board notify teachers of their tentative assignments by the Wednesday following the second board meeting in May. To accomplish this, a tentative assignment list was formulated through the efforts of representatives of the board and the union.

As of May 26, 1982, there were twelve ERI applicants. They were placed on the assignment list for the following year in order to "keep track" of everyone in the event that some of the applicants revoked their ERI applications. The ERI applicants were placed in the positions generally occupied by lower-seniority teachers where recalls to replacement positions were most likely to occur. Many of them were placed in positions that appellants were certified and qualified to teach. By the

May 28 application deadline, there were twenty-three ERI applications, none of which were ever revoked.

Appellants filed their petitions in two separate actions. In No. 93153 *(Brisbois)*, appellants argued, inter alia, that the placement of the ERI applicants in positions which appellants were certified to teach was a subterfuge to enable the board to lay off appellants. In No. 93154 *(Solomone)*, appellants argued that, by laying them off and then rehiring them at half pay when retiring teachers were placed in their positions, the board had demoted them without the procedural safeguards mandated in Article IV, § 1 of the teacher tenure act,[2] thus violating the act. The tenure commission agreed with appellants in both cases. The circuit court, on the other hand, held that the commission's determination that the board engaged in a subterfuge was not supported by competent, material and substantial evidence, so that its decision and order were to be reversed under the mandate of § 106(1)(d) of the Administrative Procedures Act.[3] The court also ruled that the layoffs and half-pay hirings were not demotions under the tenure act and that, even if they had been, the collective bargaining agreement reached pursuant to the public employment relations act[4] prevailed.

Appellants argue that the commission's finding that the board engaged in a subterfuge was supported by competent, material and substantial evidence, and for this reason the circuit court's holding to the contrary was error. It is, of course, reasonably well established that a school board may not engage in a subterfuge or circuitous methods of removing a teacher from its school

[2] MCL 38.101; MSA 15.2001.

[3] MCL 24.306(1)(d); MSA 3.560(206)(1)(d).

[4] MCL 423.201 *et seq.*; MSA 17.455(1) *et seq.*

system in order to avoid the protections afforded by the tenure act.[5] Under the commission's earlier holding in *Page v Harper Woods Public Schools*,[6] the board would have engaged in a subterfuge if it laid appellants off while knowing there were available positions for which appellants qualified, did not establish a proper reason for denying appellants those positions, and later replaced them in positions with significantly reduced pay. This, at any rate, was the belief of the commission. If it had indeed been established that the board knew that the positions were available at the time it laid appellants off, it would be necessary for us to consider whether we wished to adopt the holding in *Page* and whether *Page*, which concerned a termination rather than a demotion, controls. However, we agree with the circuit court that there was no evidence to support the finding that the board "knew" of available vacancies at the time it laid appellants off.

The layoff notices went out in April, 1982. At that time, the board had no idea how many applications would be filed or in what departments applications would be filed. Even on the cutoff date of May 28, 1982, there remained the possibility that some applications might be revoked, in which case the positions thereby "opened" would not be available. Appellants' argument on appeal is that, because the effective date of the layoffs was June 18, 1982, the board "knew" of vacancies when it laid them off. This is sophistry. The decision was made to lay appellants off long before the applications were filed. The entire ERI program, according

[5] See *Chester v Harper Woods Sch Dist*, 87 Mich App 235, 244; 273 NW2d 916 (1978); *Goodwin v Kalamazoo Bd of Ed*, 82 Mich App 559, 570; 267 NW2d 142 (1978); *Freiberg v Big Bay De Noc Bd of Ed*, 61 Mich App 404, 414-416; 232 NW2d 718 (1975).

[6] State Tenure Commission Case No. 73-60-R (1978). This Court affirmed *Page* in an unpublished opinion per curiam, released September 15, 1981 (Docket No. 50235); lv den 417 Mich 891 (1983).

to uncontradicted testimony, was implemented for the purpose of benefitting those teachers who had been laid off. The board agreed to it only under conditions which would cost the board no extra money. Appellants apparently wish that the ERI program had been used to prevent layoffs altogether, but this was not part of the collective bargaining agreement.

Appellants next argue that the fact that they were receiving less compensation in 1982-83 than they received in 1981-82 means that they were "demoted" within the meaning of Article I, § 4 of the tenure act,[7] which defines "demote" as "to reduce compensation or to transfer to a position carrying a lower salary." If the board did demote appellants, the demotion would come under Article IV, § 1 of the act, which provides:

> Discharge or demotion of a teacher on continuing tenure may be made only for reasonable and just cause, and only after such charges, notice, hearing, and determination thereof, as are hereinafter provided.[8]

In *Solomone,* the commission premised its holding that appellants were demoted upon its earlier *Brisbois* holding that the board engaged in a subterfuge by laying appellants off. The commission's own words were these:

> In the absence of this subterfuge, appellants would have been actively employed full time teachers. Thus, the net effect of appellee's [the board's] actions was to place appellants in positions carrying lower salaries. Further, this action cannot be justified on the grounds that [the board] was merely employing properly laid-off teachers as

---

[7] MCL 38.74; MSA 15.1974.
[8] MCL 38.101; MSA 15.2001.

occasional substitutes. Appellants were permanently assigned and had full responsibility for their assignments. We hold that [the board's] actions constituted a demotion within the meaning of the Act.

Because the board did not engage in a subterfuge, we do not agree with the commission's holding that the laying off and rehiring of appellants amounted to a demotion. Contrary to the commission's statement, the board *was* "merely employing properly laid-off teachers" as half-pay replacements for those who retired early. The board laid off appellants in good faith at a time when all parties involved knew that certain layoffs were inevitable. The ERI program helped to place some of these laid-off employees in half-pay jobs, instead of leaving them without employment. This was not a demotion and, therefore, did not come under Article IV, § 1 of the tenure act.

The parties devote much space to the question of whether the terms of the collective bargaining agreement negotiated under PERA and the implementation thereof supersede various sections of the tenure act. While this is an interesting question, its resolution is unnecessary because the agreement and its implementation violate no part of the tenure act. Similarly, we need not decide whether appellants' acceptance of half-pay positions estopped them from complaining that offering those positions after layoff was a demotion, because the argument was useless in any case.

Affirmed.